## TUCKER *v.* WEINER BROTHERS COMPANY.

The evidence was sufficient to authorize a recovery by the plaintiff, and the court erred in awarding a nonsuit.

FEBRUARY 14, 1911.

Attachment. Before Judge Wright. Chattooga superior court. September 16, 1909.

Declaration in attachment was filed by R. E. Tucker against the Weiner Brothers Company, alleging that the defendants were in-

debted to the plaintiff $500 principal, "as the value of an unexpired lease held by" the plaintiff on certain lands, which lease was "vacated and cancelled by petitioner at the request and instance of defendants." The defendants answered, and, at the conclusion of the plaintiff's evidence, moved for a nonsuit. To the order of the court granting a nonsuit the plaintiff excepted.

A written contract of lease of certain lands, signed by the plaintiff and Weiner Brothers, was introduced in evidence. The plaintiff testified, that he claimed certain rights under this lease, when, in January, 1908, the defendants agreed to pay him $500 for a surrender of such rights and a cancellation of the lease; and that Harry Weiner, a member of the firm of Weiner Brothers, made the contract for them with him. He further testified: "I don't know when Weiner Brothers Company took charge of this place. I worked under the same contract I started on. I know nothing about Weiner Brothers Company having anything to do with it except what I have been told and what I said. During the time I was working for them I did not have anybody else there in charge of the business except myself and Harry Weiner. During that time we were in possession of this land, and I was in possession and made settlements with them. . . The Weiners told me they lived in Akron, Ohio. I directed letters to them there, and received replies from them there. I surrendered possession of that farm and my rights under this contract. Harry Weiner came down last January was a year ago, and I had a running lease, and he wanted to buy me out. I agreed to leave its value to men, and so we did. We wanted to arbitrate the value of the lease, and we had it arbitrated. Mr. Wyatt, Mr. Hutchins, and Mr. I. L. Fansler were the arbitrators; they come and looked at the land. He wanted me to no longer claim anything under this contract. We could not agree as to what I should receive to give up my contract; thereupon had a verbal contract to leave it to certain men to decide. They came and decided what it was worth. They allowed me, as compensation for my lease on the land, $500. That assessment is down there on that paper. January 28, 1908, is the date I guess it was made. . . I surrendered the place to Harry Weiner; then the Intervale Fruit Company came in. . . I had dealings with the Weiner Brothers Company; they changed from the Weiner Brothers to the Weiner Brothers Company, but they never made any

.change with me. I was dealing all the time under the original lease until the time I surrendered it. . . That lease I surrendered I would not take $1,000 for it; it was worth $500. I offered to give them $500 back for it. The Weiner Brothers Company offered to pay me the amount of $500 for vacating this lease, in Intervale Fruit Company stock. I refused to take it, because it was not money. Mark Weiner and Harry and Charles compose Weiner Brothers Company. Harry Weiner transacted. I sold to Harry this lease upon my land, and I sold it to him and we could not agree on the price. We agreed to have arbitrators, him pick one and me one, and they called in another and they set the price. He agreed to pay that price for the Weiner Brothers Company for the surrender of that lease. I surrendered the lease on that agreement." A son of the plaintiff testified as follows: "My father began dealing with Weiner Brothers, a partnership of Ohio. When he was dealing with the Weiner Brothers he was acting under that contract. J. H. Weiner delivered that contract to him. He staid in possession and control of that farm five years. . . I was present when the arbitration was made. I have a copy of the findings of the arbitrators. . . Mr. Funk acted for the Weiner Brothers Company. I know that. I heard Mr. Weiner appoint him. He is general manager of the Weiner Brothers Company; he has charge of the business. . . My father was in possession of that property all the time until he went out under this lease and this arbitration, and nobody else was in possession of it. The Intervale Fruit Company took possession afterwards. Their stationery bears Weiner's name as general manager and treasurer. . . He [Harry Weiner] was a member of the firm of Weiner Brothers Company also, and made that contract. The proceeds of the land were sent to Weiner Brothers so long as the Weiner Brothers existed, and after that to the Weiner Brothers Company. I know the Weiner Brothers have ceased to exist, but I do not know the time they ceased to exist except by writing." John Taylor testified that he was president and treasurer of the Summerville Cotton Mills, and sold ten shares of stock therein to Weiner Brothers Company of Akron, Ohio, and "delivered to them" a certificate of this stock.

J. M. Bellah and Taylor & Jolly, for plaintiff.

C. D. Rivers, for defendant.

HOLDEN, J. (After stating the facts.) The evidence was sufficient to authorize the jury to conclude that the Weiner Brothers Company was a copartnership; that they succeeded to the rights of Weiner Brothers under the lease contract of the latter with the plaintiff; that Harry Weiner was a member of the partnership of the Weiner Brothers Company at the time of this agreement; that the plaintiff was in possession of the land referred to in the lease, claiming rights thereunder; that Harry Weiner agreed for such partnership to pay the plaintiff $500 for a surrender of the rights he claimed to have under this lease and a cancellation of the lease, and that in consideration of this agreement the plaintiff surrendered possession of the land and the contract. If these conclusions were reached by the jury from the evidence, it would be their duty to render a verdict in favor of the plaintiff. He testified that it was agreed that the amount he should be paid by the defendants for a surrender of his lease was by agreement left to arbitrators, and that they made a finding in his favor for $500. The defendants contend that this finding appears to have been in writing, and that the writing was not introduced in evidence. If this finding was in writing and parol evidence of what it contained was not admissible, the plaintiff and his son were allowed to testify without objection to what the finding was, and parol evidence as to the contents of the written finding of the arbitrators had probative effect. Moreover, the plaintiff testified that Harry Weiner "agreed to pay that price [$500] for the Weiner Brothers Company for the surrender of that lease. I surrendered the lease on that agreement." We think the court erred in awarding a nonsuit.

*Judgment reversed. All the Justices concur.*